ANNIE AXELROAD, as Executrix of CHARLES AXELROAD, Deceased, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

438

(Argued April 29, 1935; decided May 21, 1935.)

*Stephen Callaghan, Ralph Stout, Virginius Victor Zipris*
and *Saul Levine* for appellant.

*Dean Potter* for respondent.

LEHMAN, J. In January, 1924, the defendant issued a policy insuring the life of Charles Axelroad in the sum of $20,000. The insured failed to pay the premium which fell due in January, 1933, and the policy lapsed. The policy contained a provision that: " If this policy shall lapse in consequence of non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Company, and the payment of all overdue premiums with interest at six per centum per annum." The unpaid premium was $505.20. Before the policy lapsed the insured took the policy to a branch office of the defendant for the purpose of obtaining a loan to meet payment of the premium. The insured by previous loans had almost exhausted the " loan value " of the policy. He left the policy at the branch office and signed an instrument described as a " loan certificate and assignment of policy " for the purpose of obtaining a loan up to the full " loan value " of the policy. Even so, an additional sum of $223.82 was required for the payment of the premium. The insured paid $75 on February 27th at the branch office of the defendant and received a " provisional receipt " for this amount. He paid $85 on March 20th at the same office, and obtained a similar receipt. On March 23d at his home he paid the further sum of $63.82 to a representative of the defendant. With the amount which the insured could borrow upon the policy if reinstated, this sum constituted full payment of the unpaid premium. The money paid, the " loan certificate and assignment " and an application for reinstatement signed by the insured, were then sent to the home office of the defendant. The application was approved and on March 30th the policy was reinstated and returned with an appropriate indorsement to the insured. The insured died one month thereafter. The cause of the death, as stated in the death certificate submitted as part of the proof of death, was " coronary occlusions."

As a defense to this action brought upon the policy the defendant has pleaded that the answers to several questions in the application for reinstatement were false in material respects. The application was signed by the insured but the answers are in the handwriting of an employee or agent of the defendant. There can be no doubt that these answers are false. They are representations that the insured had not suffered from any illness or injury since January, 1924, and that he had not consulted any physician or physicians since that date. In truth the insured was even then suffering from the disease which caused his death a month later, and had consulted physicians for that disease. That the company relied upon these answers and was induced by these answers to reinstate the policy is obvious. Thus, there can be no doubt that if the insured gave these answers or is chargeable with their falsity the policy is unenforceable.

There is a sharp conflict of testimony as to whether the insured did in fact give these answers. There is evidence that on March 1, 1933, when the insured was about to drive off with a friend in an automobile after a visit to the defendant's branch office, the assistant manager came out and said to the insured: " I forgot, I would like this application for the reinstatement signed by you," and that thereupon the insured while sitting in the automobile signed the application without reading it and that, at that time, there was nothing but printed matter upon the paper. Though that testimony was contradicted, the jury has resolved the controversy in favor of the plaintiff. In answer to questions submitted by the judge, it found that the insured did not state to defendant's agent in words or effect that he had not suffered from any illness or injury, and had not consulted a physician. It also found that the insured signed the application in blank at the request of the defendant's agent, relying upon that agent to fill out the document in a proper manner. The trial judge set aside these findings and dismissed the

complaint. That he could not do, unless in spite of the facts found, the defendant as matter of law was not liable. The Appellate Division affirmed the judgment upon that theory. The question presented upon this appeal is whether the plaintiff is bound by the answers in an application for reinstatement of a policy signed by him in blank, though in fact such answers were never given by the insured, and the defendant's agent thereafter, without the knowledge of the insured, inserted them in the application.

The printed part of the application for reinstatement of the policy recites that the " foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement." Concededly unless the lapsed policy was reinstated by agreement of the insured and the insurance company, there can be no recovery in this action. Concededly the agreement of reinstatement was made when the insurance company acted upon and accepted the application for reinstatement. Concededly that application over the unquestioned signature of the insured contains an agreement that any purported reinstatement is made upon the express condition that for two years it shall create no liability upon the insurance company " if the foregoing statements be in any respect untrue." Concededly the statements in the application are untrue in very material respects. If we apply to

contracts of life insurance the same rules applied to other contracts, then it seems evident that the plaintiff cannot recover here.

It must be conceded that the courts have sustained obligations assumed by insurance companies under conditions where the courts would have hesitated to sustain other kinds of obligations. At least where assurance has been given by an agent or employee of an insurance company that an applicant was protected by insurance, the courts have struggled to find some way to spell out a valid contract of insurance, and perhaps their decisions have, at times, marred the symmetry of the law. Indeed this court has been compelled by candor to recognize that it did not always apply to insurance contracts the same rules applied to other contracts. So we said in *Miller* v. *Phœnix Mutual Life Ins. Co.* (107 N. Y. 292, 296), that though it is the general rule that a party signing a written agreement may not vary or alter or contradict its terms, and that though it is generally not a defense to an action upon such agreement that " the party did not read the contract, or was ignorant of its contents, or that it was prepared by the party claiming the benefit of it　*　*　*" yet in the case of life insurance policies " it is the settled doctrine of the modern cases, that where the application for insurance is drawn up by the agent of the insurer, and the answers to the interrogatories contained therein, are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto." The appellant now claims the benefit of that doctrine.

Insurance companies have sought in vain to escape the effect of that doctrine, by inserting in the application or policy stipulations that the insured warranted the truth of all statements contained in the application or in sheets

annexed thereto; that the recorded answers were in fact true; that the medical examiner or other person recording the answers acted as the agent of the insured and not of the insurance company; and that the policy should be void if the answers so recorded were untrue, even though true answers were made to the medical examiner. The court swept aside all such devices. In effect this court held that even though the insured could not vary or contradict his written contract, the company should be estopped on equitable grounds from asserting invalidity of a policy when its agent had knowledge, which should be imputed to the company, that the policy from the moment of its issue was tainted with infirmity and could be rescinded by the company. Public policy, so this court held, precluded the company from stipulating for immunity from the consequences of the wrong of its agent by the transparent device of an agreement that its own agent acting in its business and not the business of the insured, should become the agent of the insured. (*Sternaman* v. *Metropolitan Life Ins. Co.*, 170 N. Y. 13.) Thus life insurance companies, induced to issue policies upon the faith of written statements contained in applications submitted by the insured, could not by contract protect themselves against subsequent assertion by the insured that though the statements were untrue, the real truth was within the knowledge of the insurance company through knowledge of its agents imputed to it.

Then the Legislature interposed and decreed a form of policy which gave reasonable protection to an honest insured, even though he were held to his written agreement that the statements contained in a signed application were true, and authorized by the insured. In 1906 the Legislature enacted section 58 of the Insurance Law (Cons. Laws, ch. 28) and required that every policy of life insurance " shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any * * * application or other writings

unless the same are indorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties. Any waiver of the provisions of this section shall be void."

That statute destroyed the foundation for the application of the doctrine of the *Sternaman* case to life insurance policies issued thereafter and the doctrine fell with the destruction of its foundation. (*Bollard* v. *New York Life Ins. Co.*, 98 Misc. Rep. 286; affd. on opinion below, 182 App. Div. 915; affd., 228 N. Y. 521.) There can be no doubt that if section 58 applied to applications for reinstatement of a lapsed policy as well as to applications for a new policy, the controversy in this case could not arise. Then where an application is not annexed to the policy it is excluded from the contract of insurance and proof that the answers or statements in such application were false constitutes no defense to the action. (*Archer* v. *Equitable Life Assur. Co.*, 218 N. Y. 18.) Where on the other hand, the application is annexed to the policy the insured is bound by the answers and statements in the application, even though they were inserted by the agent of the company.

The difficulty in this case arises from the fact that here the controversy concerns the validity of the contract of reinstatement of the policy of insurance rather than the validity of the policy. The policy embodies the terms and conditions of the contract of insurance. Those terms and conditions cannot under the provision of the statute be enlarged by reference to documents not annexed thereto. The terms and conditions of the application for reinstatement are not thereby incorporated in the policy. They affect only the collateral contract by which the life of the policy was renewed. Nevertheless, falsity in the statements in the application which constitutes the basis of the contract of reinstatement might invalidate that contract, though such application does not

change the terms and conditions of the contract of insurance. For that reason an insurance company may attack the validity of the contract of reinstatement on the ground that the reinstatement was based upon misrepresentation in regard to material matters contained in the application for reinstatement, though such application is not annexed to the reinstated policy. Section 58 of the Insurance Law has no application in such case. So we held in *New York Life Ins. Co.* v. *Rosen* (255 N. Y. 567).

The question remains whether the attack may be defeated by proof that the insured did not make the alleged representations, but signed the application for reinstatement at the request or even insistence of the company's agent without reading it and before the answers to the questions were written in by the agent. Argument is made that since section 58 of the Insurance Law has, as we have held, no application to contracts of reinstatement, the doctrine of the *Sternaman* case and related cases applies, and precludes the company from asserting invalidity of that contract where the company's agent had knowledge of the circumstances creating such invalidity at the time when the contract of reinstatement was made.

That argument is based upon false premises. The insured had no unconditional right to reinstatement. The policy itself gave notice to the insured that when the policy lapsed it could be reinstated only upon " the production of evidence of insurability satisfactory to the Company." He was further advised by the policy that no agent, medical examiner or any other person except officers of the company could bind the company by any promises or make, modify or discharge any contract of insurance. He further agreed in the policy and was bound by the agreement that " no statement made to or by, or any knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the

applicant shall be considered as having been made to or brought to the knowledge of the company unless stated in either part A or B of this application " (*i. e.*, the original application). It is upon the background of these conditions that we must view the transaction between the parties.

It was with knowledge or notice of these conditions that the insured signed a blank application for reinstatement of the policy. Intending that the insurance company should act upon that application he signed it without reading it. If he had read it he would have known that he certified to the correctness of the statements and answers contained in the application, and expressly agreed that " if the foregoing statements be in any respect untrue, said company shall, for a period of two years from the date of such reinstatement, be under no liability." It is almost inconceivable that the company would have reinstated the policy if the insured had made true answers to the questions in the application, yet now we are told that because the insured voluntarily chose not to read the application, his representatives are not bound by its terms and may claim the benefit of a contract, free from the terms and conditions to which the insured in writing agreed and which, quite evidently, the company would not have made, except for the representations, terms and conditions contained in the application. The facts here are different from those present in the *Sternaman* case; the reasons underlying the doctrine of the *Sternaman* case do not apply here, and that doctrine does not extend to a case where an insured asks *reinstatement* of a policy and with knowledge of limitation of the authority of the company, signs the application in blank, thus placing it within the power of the agent of the insurance company to procure from the company a contract of reinstatement which the company would not have made if the facts had been within its knowledge. In the *Sternaman* case this court held that the company was estopped from asserting

the invalidity of the contract where such assertion would work a fraud upon the assured. Here the court is asked to find an equitable estoppel where assertion of the validity of the contract, in derogation of its express terms, would result in fraud on the company and unjust enrichment of the plaintiff at the expense of the company.

In truth the enactment of section 58 of the Insurance Law introduced a new public policy into this State in the law of life insurance. True, that section, as we have said, has no application to contracts of reinstatement, but the reason the Legislature did not include applications for reinstatement within the express terms of that section is that the evils which the Legislature sought to remedy were not as apparent in such case, for all the terms and conditions of the contract of reinstatement were already embodied in a single document, *i. e.*, the application itself. An applicant for reinstatement, knowing from his policy the limitations upon the authority of the company's agent, knowing too the result of a lapse of the policy and the conditions of reinstatement, can hardly complain that he has been misled by the insertion of any terms and conditions in an application for reinstatement which he has opportunity to read before signing. There the contract is simple, embodied in a single document which the company may reasonably expect the applicant to read before signing. At least he should not be permitted to gain an advantage by signing without reading.

" A contract for insurance is no different than any other contract. The insurance company is entitled to have its contract enforced by the courts as written." (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 241.) We have held, it is true, that, in accordance with a rule peculiarly applicable in insurance cases, a public policy which forbids an insurance company from asserting that the knowledge or wrong of its agent should not be imputed to it, cannot be defeated by the simple device of obtaining through the inadvertence or even the carelessness of an

applicant a contract which would exonerate the company from the consequences which would otherwise flow from the wrong of its agent. Even then, we limited the rule to cases where the insured had not previous notice of the limitations upon the agent's authority, and was deluded by the agent. We have not applied the rule to misrepresentations in an application for reinstatement, though they were known by the company's agent to be false, where the applicant had notice of limitations upon the agent's authority and the company was deluded into approval of a reinstatement which otherwise would not have been granted. (Cf. *McCormack* v. *Security Mutual Life Ins. Co.*, 220 N. Y. 447.) Then enforcement of the terms and conditions of the application to which the applicant agreed even by inadvertence, excusable neglect or reliance upon the agent's good faith, causes no injury to the insured or his representatives, for except for the misrepresentation, no reinstatement of the lapsed policy would have been effected.

We find confirmation for this conclusion in the provisions of section 58 of the Insurance Law, even though that section does not apply to applications for reinstatement of lapsed policies. It creates a legislative rule of public policy in place of the judge-made rule previously applied to applications for life insurance policies. Where by annexation to the policy of the application upon which the policy is based, an assured obtains knowledge of and opportunity to examine the representations contained in the application, misrepresentation of material facts within the knowledge of the assured may avoid the policy, though the company's agent had knowledge of the truth and the assured did not intend to deceive the company. In excluding from the contract of insurance the terms and conditions contained in an application or other document not annexed to the policy, the Legislature has differentiated between contracts of insurance embodied in a policy and contracts for reinstatement of lapsed policies.

The same reasons which might reasonably lead to such differentiation dictate, however, the conclusion that where any representations contained in an application become part of the contract by annexation, in accordance with the statutory command, or without such annexation where the Legislature has not given such command, the representations should be given effect in so far, at least, as they do not violate the public policy of the State. Then no sound reason exists why the courts should apply a rule of public policy created by themselves to representations contained in applications for *reinstatement* though the Legislature has declared that representations contained in applications for a new policy should be given effect according to their terms.

When this court decided in *New York Life Ins. Co.* v. *Rosen* (*supra*) that section 58 of the Insurance Law does not exclude the representations contained in the application for reinstatement from the contract for reinstatement, though such application is not annexed to the policy, and that the insurance company may avoid the contract because of misrepresentations contained in the application, the question was not presented as to whether the insurance company might still in proper circumstances be estopped from asserting that the representations were untrue. Now that question is presented. We find in the circumstances here no ground for estoppel. The insurance company cannot be held for a contract with different terms from the contract it actually made. The applicant knew that the reinstatement would be made only upon his signed application. He chose to sign without reading the terms of the application. If he relied upon the agent to fill out blanks, he made the company's agent his own agent for that purpose, for he had previously agreed in the policy that the authority vested by the company in its agent did not extend so far. We have decided in *Bollard* v. *New York Life Ins. Co.* (*supra*) that where an application for a policy becomes part of the contract of insurance by annexation, no earlier rule of public

policy precludes the company from showing that the representations contained in the application were false even though inserted by the company's agent. Unless we introduce into the law of insurance distinctions without substance and rules applicable to no other class of contract, we are constrained to hold that both insured and insurer are alike subject to the obligations and entitled to the benefit of all the terms of contracts of insurance entered into voluntarily and with knowledge that a particular instrument contains those terms. When that is shown, there can be no room for divergent rules of public policy applicable to contracts embodied in a policy and contracts for reinstatement of a lapsed policy.

The judgment should be affirmed, with costs.

HUBBS, J. (dissenting). The underlying principle involved in *Sternaman* v. *Metropolitan Life Ins. Co.* (170 N. Y. 13) was that it constituted a fraud on the insured to permit the company to avail itself, as a defense, of false answers written in an application by a medical examiner for the company, when the insured was himself free from fraud.

It was common knowledge that agents of life insurance companies, for the purpose of securing the issuance of policies and thereby earning their commissions, prepared applications for policies in such a way that they would pass and receive the approval of the home office, regardless of the facts stated to them by applicants.

An insured paid his premiums believing he had a valid policy and the beneficiary was often met by the defense of false statements in the application which avoided the policy. Such was the well-known situation when the *Sternaman* case was decided and the opinion was written with that knowledge in mind.

Exactly the same situation exists in this case in a lesser degree. Here the agent is anxious to retain the insured as a policyholder and possibly to receive renewal commissions. His volume of business depends to a certain

extent upon doing so. The jury has found, and we are bound by the findings, that the insured was free from fraud, that he signed the blank form of application before it was filled out at the direction of the agent and that the agent filled in the answers now alleged to be false, without his knowledge or consent. That was the exact evil which existed before the *Sternaman* case. Concededly, section 58 of the Insurance Law does not apply. What law does apply? It seems to me that the law of the *Sternaman* case must apply. If that law applies, as I think it does, then the act of the agent was the act of the company and the defense is not established as a matter of law but a question of fact was presented. The provisions of the policy quoted by Judge LEHMAN contain nothing to the contrary. He states in his opinion that the applicant knew that " the reinstatement would be made only upon his signed application."

The policy contains no such provision. It does provide that the policy may be reinstated " upon the production of evidence of insurability satisfactory to the company."

What that should consist of is not stated. There is no claim here that the assured made any false statement and the proposed decision rests upon the assertion that in filling in the answers the company's agent became the insured's agent, which is contrary to our decisions; also that in signing the form in blank he relied upon the agent to fill it out properly.

What the agent did the company did. What the agent knew the company knew, and with that knowledge it issued the reinstatement agreement and is bound by it.

. Unless we are prepared to overrule the *Sternaman* case and *Miller* v. *Phœnix Mut. Life Ins. Co.* (107 N. Y. 292), and adopt the United States rule, the judgment of the Appellate Division should be reversed.

CRANE, Ch. J., O'BRIEN and LOUGHRAN, JJ., concur with LEHMAN, J.; HUBBS, J., dissents in opinion, in which CROUCH and FINCH, JJ., concur.

Judgment affirmed.