BERTHA E. GILLAN, APPELLEE, v. EQUITABLE LIFE ASSURANCE SOCIETY, APPELLANT.

10 N. W. (2d) 693

FILED JULY 23, 1943. No. 31397.

*Brown, Crossman, West, Barton & Fitch* and *Sloans, Keenan & Corbitt,* for appellant.

*Waring & Waring* and *Perry, VanPelt & Marti, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

Yeager, J.

This action is now before this court on rehearing. An opinion previously adopted is reported in 142 Neb. 497, 6 N. W. (2d) 782. In the light of the view now taken a further statement appears to be required.

The action is at law and was commenced in the county court of Fillmore county, Nebraska. It was by Bertha E. Gillan, plaintiff, against the Equitable Life Assurance Society, defendant, and was to recover disability benefits of $50 a month for the months of March, April and May, 1941, on an insurance policy. The policy was a 20-payment life contract with a disability benefit provision for which an additional premium was paid. In the county court judgment was for the plaintiff from which the defendant appealed to the district court. There was a trial to a jury in the district court which resulted in a verdict and judgment for the plaintiff. From this judgment the defendant has brought the case to this court on appeal.

In her petition the plaintiff pleaded substantially that in January, 1929, the defendant issued to her a convertible term life insurance policy for $5,000, convertible within five years, in the consideration of quarterly premiums in the amount of $21.85 and that the policy contained a provision for the payment of $50 a month in case of total and permanent disability with a provision that premiums should be waived in case of such disability. The policy lapsed for nonpayment of premium in 1929 but was reinstated in the same year. In 1934 the policy was converted to a 20-payment life policy and the converted life policy contained the same provision for disability benefits as the original contract. She alleged that she became totally and permanently disabled in 1930 and that the defendant paid the monthly benefits from the date of disability to March, 1941, when it ceased to pay. She prayed for a judgment for $150 which was for monthly benefits for three months after the defendant ceased to make payments.

In an answer to the petition, it was alleged substantially that the plaintiff procured the policy by fraud; that the ap-

plication therefor which required that plaintiff submit to a medical examination and make response to questions to be propounded and which she was required to sign, contained false statements of fact material to the risk; that she was required to appear before a medical examiner of the defendant and state the name of every physician or practitioner whom she had consulted or who had treated her during the past five years and to answer the question: "Have you ever had or been treated for any disease or disturbance of the stomach, liver, intestines, kidney, bladder, or genitourinary organs?" That the inquiries were made by the medical examiner and to the first inquiry she answered that she had consulted none. To the second she answered in the negative and the answers so made were entered on the application by the examiner and signed by plaintiff, which answers plaintiff agreed in the following words should become a part of the contract: "the foregoing answers shall also become part of any policy contract that may be issued on the strength thereof." That the answers were false in that prior to 1918 plaintiff had a disturbance or disease of the right kidney, which was anchored by a surgical operation, also that she had submitted to an operation for the removal of the right fallopian tube and an ovary, and further in May, 1928, she had submitted to an operation for the removal of her uterus.

It is further alleged that included in the quarterly premium of $21.85 was a premium of $2.90 for the disability feature of the policy.

It is further alleged that relying on the false representations of the plaintiff the defendant approved her application for disability benefits and paid her $50 a month from May 9, 1930, to March 9, 1941, or a total of $6,550, when it ceased to make payments for the reason that at that time it discovered the falsity of the statements made by plaintiff in her application.

By way of cross-petition the defendant sought to recover a judgment for $6,550, that being the amount claimed to have been paid because of the false and fraudulent representations of the plaintiff.

For reply the plaintiff denied that she made any false statements and alleged that she answered truthfully all questions propounded to her but that without her knowledge the untruthful answers were written in by the examiner and that she appended her signature without reading the answers and knew not their content.

Preliminary to a discussion of the issues thus presented by the pleadings it seems proper to state that this action in no wise affects the life insurance policy. By the specific terms of the policy it became incontestable as to life insurance after one year from the date of issue. Incontestability by likewise specific provision did not extend to the disability provision. If there was fraud it affects only the disability provision.

As pointed out in the former opinion the principal issue of fact arose on the traversed plea of the defendant that the insurer was induced by false material statements of plaintiff to enter into the contract and that otherwise the risk for disability benefits would not have been assumed. The opinion passes directly from this observation to the burden of proof and states as a rule of law the following: "On this issue the burden was on defendant to prove that the statements were untrue, that they were made knowingly with the fraudulent intent to mislead and deceive insurer, that they were material to the risks and that the insurer relied on them." As authority for the rule *Pollard v. Royal Highlanders,* 128 Neb. 790, 260 N. W. 399, is cited. This was premature if not definitely erroneous. If this rule is applicable it must be so because the statements were representations as distinguished from warranties. The statement in *Pollard v. Royal Highlanders, supra,* is the following: "The law is also well settled in this state that, in order to defeat a recovery because of representations made to the insurer alleged to be false, the insurer must prove that the representations are untrue, and were made by the assured knowingly with the fraudulent intent to mislead and deceive, that they were material to the risk, and were relied on by the defendant."

There can be no question that the court, in announcing this definitive principle, intended that it should apply to representations alone since in the paragraph immediately preceding, the distinction between representations and warranties is clearly drawn. It was there stated: "The chief distinction between a warranty and a representation in insurance law is that the former is the assertion by the assured of some fact, on the literal truth of which the validity of the policy depends, without regard to the materiality of such fact; while a representation is also the assertion by the assured of a fact, but the validity of the policy does not depend upon the literal truth of said assertion."

This rule then may not be applied unless and until it is ascertained that the answers claimed to have been made by plaintiff were representations and not warranties.

Whether they were representations or warranties, if made by plaintiff, must depend upon an analysis of the contract, and application thereto of the part of section 44-602, Comp. St. 1929, which distinguishes representations and warranties in insurance contracts where the application becomes a part of the contract, rather than the decisions of the court and texts wherein these terms are defined. There being no ambiguity, the legislative definition must be accepted. The provision referred to is the following: "No policy of life or endowment insurance, except policies of industrial insurance or where the premiums are payable monthly or oftener, shall be issued or delivered in this state unless it contains in substance the following provisions: * * * 3. A provision that the policy shall constitute the entire contract between the parties; but if the company desires to make the application a part of the contract, it may do so; Provided, a copy of such application shall be endorsed upon or attached to the policy when issued, and in such case, the policy shall contain a provision that the policy and the application therefor shall constitute the entire contract between the parties; and 4. A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and

that no such statement shall avoid the policy unless it is contained in a written application, and a copy of such application shall be endorsed upon or attached to the policy when issued."

That the answers here were false there can be no question. Were they also fraudulent, or in the words of the statute was there an "absence of fraud" in their making? If there was an absence of fraud then they were representations.

Fraud has been defined as follows:

"Fraud consists of some deceitful practice or wilful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury. As distinguished from negligence, it is always positive, intentional." Black's Law Dictionary (3d ed.) 813.

"Fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." Black's Law Dictionary (3d ed.) 813.

"Deception practiced in order to induce another to part with property or surrender some legal right; a false representation made with an intention to deceive; may be committed by stating what is known to be false or by professing knowledge of the truth of a statement which is false, but in either case, the essential ingredient is a falsehood uttered with intent to deceive." Black's Law Dictionary (3d ed.) 44.

Within the meaning of these definitions the conclusion is inescapable that the answers given by plaintiff were fraudulent. It is well known that the issuance of policies with or without disability benefits is dependent upon the health of the applicant, and a wilful and intentional failure of an applicant to disclose in response to direct and clear inquiry that which the company had the right to know for the purpose of determining the true state of health of the applicant, and whether or not it would accept the risk, cannot be considered other than fraudulent.

This case is clearly distinguishable from *Modern Woodmen of America v. Wilson*, 76 Neb. 344, 107 N. W. 568. In that case this court permitted the verdict in favor of plaintiff, who had made untrue statements regarding matters bearing on his health in his application for insurance, to stand on the ground of high probability that the insured did not understand the questions propounded. The case of *Yonda v. Royal Neighbors of America*, 96 Neb. 730, 148 N. W. 926, is also distinguishable. There it was concluded that the insured when she made the statement as to her health, in the light of the evidence, only expressed an opinion and did not make a warranty, and with regard to attendance of a physician, because of the insignificance of treatment, could well have failed to respond correctly because of lapse of memory. The doctor had not been called for her but prescribed while in attendance upon another member of the family.

We do not think the case of *Pollard v. Royal Highlanders, supra,* supports the position of plaintiff here. There the insured made application for reinstatement of a policy of life insurance. She certified to her good health in the following words: "I have sustained no personal injury, nor been afflicted with any disease or sickness from which I am not now fully recovered." The court properly held that under the evidence there was a jury question as to the truthfulness of the certificate and the intention in making it. No such question was presented here. The untruthfulness of the answers attributed to plaintiff in this case appears without question.

Within the meaning of the statute (Comp. St. 1929, sec. 44-602) we are required to hold that the answers given by plaintiff were warranties and not representations. In the absence of statute, under the decisions of this court, we would still be required to hold that they were warranties. See *Aetna Ins. Co. v. Simmons*, 49 Neb. 811, 69 N. W. 125; *Aetna Life Ins Co. v. Rehlaender*, 68 Neb. 284, 94 N. W. 129; *Royal Neighbors of America v. Wallace*, 73 Neb. 409, 102 N. W. 1020; *Modern Woodmen of America v. Wilson,*

*supra; Yonda v. Royal Neighbors of America, supra; Beeler v. Supreme Tribe of Ben Hur,* 106 Neb. 853, 184 N. W. 917; *Morrissey v. Travelers Protective Ass'n,* 122 Neb. 329, 240 N. W. 307; *Pollard v. Royal Highlanders, supra.*

The next matter for determination is that of whether or not the warranty avoids the right of plaintiff to recover the benefits provided in the policy.

In the absence of statute the rule has generally been declared to be that a warranty by an insured which is false and fraudulent renders the policy of insurance void at the option of the insurer when the falsity of the warranty comes to its attention. *Spaulding v. Mutual Life Ins. Co.,* 96 Vt. 67, 117 Atl. 376; *Minsker v. John Hancock Mutual Life Ins. Co.,* 254 N. Y. 333, 173 N. E. 4; *Axelroad v. Metropolitan Life Ins. Co.,* 267 N. Y. 437, 196 N. E. 388; *Greber v. Equitable Life Assurance Society,* 43 Ariz. 1, 28 Pac. (2d) 817; *Metropolitan Life Ins. Co. v. Alterovitz,* 214 Ind. 186, 14 N. E. (2d) 570; *Mutual Life Ins. Co. v. Hilton-Green,* 241 U. S. 613, 36 S. Ct. 676.

In this state by statute (Comp. St. 1929, sec. 44-322) no misrepresentation or warranty made in the negotiation for a policy or contract of insurance by an insured may operate to avoid the policy unless such misrepresentation deceived the company to its injury. The section is the following:

"No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

It will be noted that the section contains two sentences. The first deals with the effect of making misrepresenta-

tions and warranties and.the second, breach after issuance of policy. This is important only for the purpose of pointing out that the argument of plaintiff that the defendant has no ground for complaint since plaintiff did not become disabled in consequence of any ailment suffered before issuance of the policy, and in further consequence the defendant suffered no loss therefrom, is beside any point in this case. The loss contemplated by the second sentence pertains to loss occasioned by breach. We are here concerned only with deception causing injury as the result of misrepresentation or warranty in the procurement of issuance of the policy as is apparent from the plain wording of the statute. See *Muhlbach v. Illinois Bankers Life Ass'n*, 108 Neb. 146, 187 N. W. 787.

Was the defendant injured within the meaning of the law by the answers in the application? That the condition and state of health of plaintiff at the time of her application was important to the risk of life insurance and disability benefits cannot well be denied. Her response to specific inquiries 'in relation to her health or to matters from which the state of her health might be ascertained were no less material. Her position required of her honesty and good faith, at least in those matters which were peculiarly within her own knowledge and beyond the knowledge of the defendant, in answering the questions propounded.

In *Muhlbach v. Illinois Bankers Life Ass'n, supra,* it is stated: "Where the question in the application calls for an answer peculiarly within the knowledge of the applicant, an untrue answer relating to a matter material to the risk and relied upon by the insurer will avoid the policy. In *Seal v. Farmers & Merchants Ins. Co.,* 59 Neb. 253, the application was for fire insurance, in which the insured falsely stated there were no liens upon the premises, and it was held the false statement avoided the policy. In *Swanback v. Sovereign Camp, W. O. W.,* 103 Neb. 34, the insured falsely stated that he had never been rejected by any other insurance company in applying for life insurance, and it was held that the false statement avoided the policy.

It will be observed that the questions asked in these cases called for information peculiarly within the personal knowledge of the applicant." In the same opinion, referring to section 44-322, then section 3187, Rev. St. 1913, the court said: "It seems plain that the question now before us arises under the first clause of the section above quoted. The statute was never intended to deprive an insurance company of the defense of fraud in the negotiations for the contract of insurance. On the contrary, by its very terms it is said that the misrepresentations shall not avoid the policy unless the misrepresentations deceived the company to its injury. If, through the untrue statement of the insured, the defendant was induced to issue the policy, and thus become obligated under its contract, when it would not have done so had a truthful answer been made, it would seem clear that the defendant was deceived to its injury, and the statute above quoted would not apply." See, also, *Goodell v. Union Automobile Ins. Co.*, 111 Neb. 228, 196 N. W. 112; *Morrissey v. Travelers Protective Ass'n, supra;* *Scott v. New England Mutual Life Ins. Co.*, 126 Neb. 514, 253 N. W. 685.

In the light of the authorities and under the facts of this case the conclusion is inescapable that the defendant was injured by reason of the false answers contained in the application of plaintiff for insurance.

There remains a further important question for consideration and determination. Plaintiff by reply has alleged that she gave truthful answers to the questions but that the medical examiner recorded the false ones which appear in the application, without her knowledge and that she signed her name without reading and that she was without knowledge of the falsity of the answers. She so testified. The medical examiner testified that he recorded the answers as given by her.

The defendant contends substantially, assuming that the answers were not those given by plaintiff, that in an action at law on the policy she may not be permitted by parol evidence to vary, contradict or impeach the terms of her writ-

ten contract. As has been pointed out, agreeable to the statute and stipulation in the policy, the application became a part of the contract, and of course a copy of the application was attached to the policy delivered to plaintiff.

In *Greber v. Equitable Life Assurance Society, supra,* the court, in denying the right of the insured to assert lack of knowledge of the contents of an answer in an application which became a part of the contract, said: "In addition, an exact copy of the answers he had made in his application * * * was * * * attached to the policy before it was delivered, and a reading of it when he received it would have disclosed to him that he had answered the physician incorrectly relative to a previous rejection and have led, if it had been done inadvertently, to a correction of it." In the same opinion the court quoted with approval the following from *Minsker v. John Hancock Mutual Life Ins. Co., supra*: "When an insured receives a policy, it is his duty to read it or have it read, and if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected."

The supreme court of the United States in *Northern Assurance Co. v. Grand View Bldg. Ass'n,* 183 U. S. 308, 22 S. Ct. 133, a case originating in Nebraska, declared that the rule with regard to impeachment of the contents of ordinary contracts was equally applicable to insurance contracts. In relation to this subject in its application to ordinary as well as insurance contracts the court in the opinion quoted with approval from Starkie (9th Am. ed.) 587: "It is likewise a general and most inflexible rule, that wherever written instruments are appointed, either by the requirement of law, or by the compact of the parties, to be the repositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy; of principle, because such instruments are in their nature and origin entitled to a much higher degree of credit than parol evi-

dence; of policy, because it would be attended with great mischief if those instruments upon which men's rights depended were liable to be impeached by loose collateral evidence."

In *Metropolitan Life Ins. Co. v. Alterovitz, supra,* a case in point of fact very similar to the one at bar, the court, after reviewing many decisions, quoted and adopted the following rule from *Sun Fire Office v. Wich,* 6 Colo. App. 103, 39 Pac. 587: "There is no reason, in contracts of insurance, that a party should be, by law, relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs. His failure to do so will or should not relieve him, or allow him to avoid the contract." In adopting the rule the court said: "This seems to us to be a sound statement of law and especially in view of the fact that in the instant case the appellee under his own signature stated that the answers to the questions in the application were correctly written as given by the applicant and were full, true and complete. It is at once apparent that in an ordinary contract the appellee would be bound by such a statement and we see no sound reason why the same rule should not apply in the instant case although it is a contract of insurance."

The United States supreme court in *Lumber Underwriters v. Rife,* 237 U. S. 605, 35 S. Ct. 717, said in regard to contracts of insurance: "Of course if the insured can prove that he made a different contract from that expressed in the writing he may have it reformed in equity. What he cannot do is to take a policy without reading it and then when he comes to sue at law upon the instrument ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting a jury strike out a clause."

Other cases generally supporting the rule contended for by the defendant are, *Axelroad v. Metropolitan Life Ins. Co.,* 267 N. Y. 437, 196 N. E. 388; *Layton v. New York Life Ins. Co.,* 55 Cal. App. 202, 202 Pac. 958; *Modern Woodmen of America v. Angle,* 127 Mo. App. 94, 104 S. W. 297.

After a careful consideration of the authorities we conclude that there is no sufficient reason in contracts of insurance why a party should be relieved from the duty of exercising the ordinary care and prudence that would be exacted in relation to other contracts.

The proper rule of law is that in an action at law on an insurance policy an assured may not, by parol evidence, impeach the written statements of the assured in the application in those cases where the application has become a part of the contract by stipulation and in accordance with statute and a copy thereof attached to the policy at the time of delivery.

We are not unmindful of the fact that in the early case of *German Ins. Co. v. Frederick*, 57 Neb. 538, 77 N. W. 1106, this court adopted the rule that parol evidence was admissible to prove that answers were not those of the insured, and that the insured made true answers which were incorrectly recorded without the knowledge of the insured. This rule has been followed as late as 1939 in the case of *Farmers & Bankers Life Ins. Co. v. Mathers*, 135 Neb. 757, 284 N. W. 286, but having in mind the safeguards with regard to misrepresentations and warranties contained in section 44-322, Comp. St. 1929, and a due appreciation of the integrity of written contracts in general and the integrity which should obtain in insurance contracts, the rule contained in those decisions is overruled.

An examination of the record reveals, however, that the evidence of plaintiff to the effect that she gave the correct answers to defendant's medical examiner and that he inserted incorrect answers in the application was not objected to. Neither was objection made to the statement of plaintiff that she signed the application without knowledge of the incorrect answers contained therein. The defendant, not having objected at the trial, is in no position to object to the receiving of such evidence at this stage of the proceedings. It is evident that the case was tried in the district court on the theory that plaintiff could properly tender parol evidence to vary the terms of the application

signed by her. The trial court adopted this theory of the parties in his instructions to the jury. In doing this, no error was committed. We have many times held that, where a certain theory on any issue is relied upon by the parties at the trial as the proper one, it will be adhered to on appeal whether it is correct or not. *Behle v. Loup River Public Power District,* 138 Neb. 566, 293 N. W. 413; *United States Tire Dealers Mutual Corporation v. Laune,* 139 Neb. 26, 296 N. W. 333; *Bohmont v. Moore,* 141 Neb. 91, 2 N. W. (2d) 599. The judgment of the district court must under these circumstances be affirmed.

The former opinion in this case is vacated and set aside in so far as it conflicts with this opinion. The motion for a rehearing is denied for the reasons herein stated.

REHEARING DENIED.