Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2019 09:07 AM CDT

Mark Diamond, appellant, v. State of Nebraska,
Department of Insurance, appellee.

___ N.W.2d ___

Filed April 19, 2019.    No. S-17-1107.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or
   final order rendered by a district court in a judicial review pursuant to
   the Administrative Procedure Act may be reversed, vacated, or modified
   by an appellate court for errors appearing on the record.
2. ____: ____: ____. When reviewing an order of a district court under
   the Administrative Procedure Act for errors appearing on the record,
   the inquiry is whether the decision conforms to the law, is sup-
   ported by competent evidence, and is neither arbitrary, capricious, nor
   unreasonable.
3. **Judgments: Appeal and Error.** An appellate court, in reviewing a dis-
   trict court's judgment for errors appearing on the record, will not substi-
   tute its factual findings for those of the district court where competent
   evidence supports those findings.
4. **Statutes: Appeal and Error.** Statutory interpretation presents a ques-
   tion of law, for which an appellate court has an obligation to reach
   an independent conclusion irrespective of the decision made by the
   court below.
5. **Insurance: Sales.** The Insurance Producers Licensing Act, Neb. Rev.
   Stat. §§ 44-4047 to 44-4069 (Reissue 2010 & Cum. Supp. 2018), autho-
   rizes disciplinary actions against licensed insurance producers.
6. **Actions: Jurisdiction: Insurance: Sales: Time.** Under Neb. Rev. Stat.
   § 44-4065 (Reissue 2010), if an insurance producer fails to report a
   civil action taken against the producer in another jurisdiction, within 30
   days of the final disposition of the civil action, the producer violates the
   reporting requirement of § 44-4065(1).
7. **Statutes: Appeal and Error.** When statutory interpretation is one of
   first impression, the statutory language is to be given its plain and ordi-
   nary meaning, and an appellate court will not resort to interpretation

to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

8. **Insurance: Sales: Fraud: Words and Phrases.** Under Neb. Rev. Stat. § 44-4059(1)(g) (Cum. Supp. 2018), "fraud" of an insurance producer means any act, omission, or concealment which involves a breach of legal or equitable duty, trust, or confidence justly reposed, and injurious to another or by which an undue and unconscientious advantage is taken of another.

9. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Timothy P. Sullivan, of Sullivan Law, and Arthur W. Leach, of Law Office of Arthur W. Leach, for appellant.

Douglas J. Peterson, Attorney General, and John L. Jelkin for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

This appeal presents our first opportunity to consider the Insurance Producers Licensing Act.[1] Addressing the regulatory effect of a consent judgment previously entered against Mark Diamond, a licensed insurance producer, the Nebraska Department of Insurance determined that he had violated three provisions of the act and imposed an administrative fine. On review,[2] the district court upheld the department's order. On appeal to this court, he contests only one violation—arguing

---

[1] Neb. Rev. Stat. §§ 44-4047 to 44-4069 (Reissue 2010 & Cum. Supp. 2018).

[2] See Neb. Rev. Stat. § 84-917 (Reissue 2014) (judicial review under Administrative Procedure Act).

that his confession of liability in the consent judgment did not "admit[]" to "fraud" within the meaning of § 44-4059(1)(g). Applying settled rules of statutory interpretation, we reject Diamond's argument. Accordingly, we affirm the district court's judgment.

## BACKGROUND

### Colorado Litigation

In February 2012, the United States of America and the State of Colorado filed a civil action in the U.S. District Court for the District of Colorado against Bella Homes, LLC, and individuals within the company, including Diamond. The complaint alleged violations of Mortgage Assistance Relief Services (MARS)[3] rules and related claims.

According to the complaint, Bella Homes intended to buy homes from individuals who were struggling to make their mortgage payments and provide a 3- to 7-year repayment plan. Essentially, it was expected to purchase the homeowner's mortgage from the existing lender and enter into a lease with the homeowner, where the homeowner would pay 40 to 60 percent of their mortgage payment in "rent" to Bella Homes. It never purchased a home loan from a mortgage lender. Nor did it stop any foreclosure against a homeowner. It did take over $3 million in "rent" from more than 450 customers nationwide.

Diamond was the chief executive officer and president of Bella Homes. He formed Bella Homes at the request of Daniel Delpiano, who developed the idea for that enterprise. Because Delpiano had twice been convicted of fraud, he was prohibited from being a fiduciary or handling another's finances.

In March 2012, Diamond entered into a stipulated consent judgment and permanent injunction, wherein he "confess[ed] liability" to counts 6 and 7 of the complaint. Each of these two counts consisted of two numbered paragraphs. The first

---

[3] See 12 C.F.R. § 1015 (2018) (previously found at 16 C.F.R. § 322 (2012)).

paragraph under each count incorporated the allegations in paragraphs 1 through 184 of the complaint. Those paragraphs described an "ongoing foreclosure-rescue scheme to defraud distressed homeowners nationwide," "fraudulently obtain[ing] approximately $3,000,000 from over 450 homeowners," "numerous material misrepresentations to convey the false and fraudulent impression that homeowners will be able to remain in their home," and "misrepresentations to convey the false impression that Bella Homes will stop any foreclosure on the home." The second paragraph under each count alleged that "[b]y virtue of the foregoing [allegations in paragraphs 1 through 184]," Diamond and others were violating a particular rule in a specified manner.

Thus, the second paragraph of count 6 asserted that Diamond was "violating [§ 1015.3(c)] of the MARS Rule" and that he did so "by making a representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service without competent and reliable evidence that substantiate[d] that the representation [was] true." The second paragraph of count 7 asserted that Diamond was "violating [§ 1015.5(a)] of the MARS Rule," which makes it a violation to "'Request or receive payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer.'" In the consent judgment, Bella Homes admitted to the allegations in the complaint and acknowledged its role in defrauding homeowners.

## Nebraska Administrative Action

In December 2016, more than 4 years after the entry of the consent judgment, the Department of Insurance brought a petition against Diamond for violations of §§ 44-4065(1) and 44-4059(1)(g) and (h). After a hearing, the director found

that because Diamond admitted that he failed to report the consent order within 30 days of disposition, he violated § 44-4065(1). The director reasoned that although Diamond may not have been complicit in the fraudulent scheme, lending his reputation and partnering with someone convicted of fraud showed irresponsibility in business and violated § 44-4059(1)(h). The director also determined that because Diamond admitted to violating MARS rule § 1015.3(c), he admitted liability to a count that included fraud and therefore, had violated § 44-4059(1)(g). The director concluded that because several years had passed and no Nebraska insurance consumers had been harmed, revocation of Diamond's license was not warranted. The director levied an administrative fine of $2,500.

Diamond appealed to the district court. In disposing of the appeal, the court reasoned that Diamond clearly violated § 44-4065(1), because he admitted that he did not report his involvement in the Colorado civil action within 30 days of the consent judgment. The court found that in the consent judgment, Diamond admitted to paragraphs 1 through 184 of the Colorado complaint, to forming Bella Homes, to paying Delpiano through another company he owned, and to receiving plane ticket reimbursement. This, the court reasoned, provided credible evidence of fraud in violation of § 44-4059(1)(g) and (h). The court explained that it would be an abrogation of the department's duty to disregard the substance of the consent decree and not exercise its disciplinary authority. For these reasons, the court affirmed the department's order.

Diamond filed a timely appeal, which we moved to our docket.[4]

## ASSIGNMENT OF ERROR

Diamond assigns that the district court erred in affirming the department's decision to levy a fine against him, because

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

the decision was "predicated on a finding that [Diamond] was involved in fraud, which [was] incorrect as a matter of law."

## STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[5] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6] An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[7]

[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

## ANALYSIS

[5] The Insurance Producers Licensing Act governs the qualifications and procedures for the licensing of insurance producers.[9] An insurance producer is defined as "a person required to be licensed under the laws of this state, including the Insurance Producers Licensing Act, to sell, solicit, or negotiate insurance."[10] The act is intended to "improve efficiency,

---

[5] *Leon V. v. Nebraska Dept. of Health & Human Servs., ante* p. 81, 921 N.W.2d 584 (2019).

[6] *Id.*

[7] *Id.*

[8] *Patterson v. Metropolitan Util. Dist., ante* p. 442, 923 N.W.2d 717 (2019).

[9] § 44-4048(1).

[10] Neb. Rev. Stat. § 44-103(10) (Reissue 2010); § 44-4049(5).

permit the use of new technology, and reduce costs associated with issuing and renewing insurance licenses."[11] Diamond does not dispute that he is an insurance producer subject to the act or that the act authorizes disciplinary actions against licensed insurance producers.

In Diamond's brief, he contended that the district court inappropriately predicated the determination of whether he violated § 44-4065 on a finding of fraud. There, he argued that what both the department's hearing officer and the district court "ignored" was that "there was never an admission of 'fraud' made by [Diamond] sufficient to find him in violation of . . . § 44-4065 (1)(g) which would have triggered the reporting requirements of section 1 of that statute."[12] Because § 44-4065 does not have a subsection (1)(g), Diamond's argument in his brief was difficult to follow.

At oral argument, Diamond conceded that he does not contest the district court's determinations that he violated §§ 44-4065(1) (failing to report) and 44-4059(1)(h) (irresponsibility in business). As clarified at oral argument, his sole contention on appeal is that the district court erred in finding that in the consent judgment, he admitted to fraud within the meaning of § 44-4059(1)(g). We disagree.

[6] Before turning to that argument, we briefly address Diamond's failure to report. Under § 44-4065(1), "An insurance producer shall report to the director any administrative action taken against the producer in another jurisdiction, . . . by another governmental agency within thirty days of the final disposition of the matter." For purposes of § 44-4065(1), an "administrative action" includes, but is not limited to, "any arbitration or mediation award, disciplinary action, civil action, or sanction taken against or involving an insurance producer."[13] Diamond no longer contends

---

[11] § 44-4048(1).

[12] Reply brief for appellant at 4.

[13] § 44-4065(4).

that in order to violate § 44-4065(1), the underlying action must be predicated on fraud. We hold that under § 44-4065, if an insurance producer fails to report a civil action taken against the producer in another jurisdiction, within 30 days of the final disposition of the civil action, the producer violates the reporting requirement of § 44-4065(1). It is abundantly clear from the record that Diamond failed to report the consent judgment within 30 days and therefore violated § 44-4065(1). And at oral argument, he conceded that he had done so.

Now, we turn to Diamond's remaining argument: The district court erred in finding that in the consent judgment, Diamond admitted to fraud within the meaning of § 44-4059(1)(g). Diamond contends that because he never specifically admitted to fraud under MARS rule § 1015.3(c), nor was the word "fraud" used in that count, the court could not find that he admitted to fraud. We reject this argument.

We recall the controlling statutory language. Under § 44-4059(1):

> The director may suspend, revoke, or refuse to issue or renew an insurance producer's license or may levy an administrative fine in accordance with subsection (4) of this section, or any combination of actions, for any one or more of the following causes:
>
> . . . .
> (g) Having admitted or been found to have committed any insurance unfair trade practice, any unfair claims settlement practice, or fraud.

Here, resolution of Diamond's argument requires us to consider two matters: the meaning of "fraud" under § 44-4059(1)(g) and the scope of his "admi[ssion]" in the consent judgment.

The meaning of "fraud" in § 44-4059(1)(g) flows from the Nebraska act and not from another jurisdiction's characterization of a particular violation of a law or regulation. Thus, the meaning of "fraud" under § 44-4059(1)(g) is purely a

question of statutory interpretation. And settled principles of law dictate how we interpret this statute.

[7] When statutory interpretation is one of first impression, the statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[14] Here, we consider the meaning of "fraud" under § 44-4059(1)(g) for the first time. Thus, we look to the plain and ordinary meaning of the word "fraud" as used in the context of the act.

The Legislature adopted the Insurance Producers Licensing Act in 2001 as a response to the federal Gramm-Leach-Bliley Financial Services Modernization Act.[15] The act was crafted and promulgated by the National Association of Insurance Commissioners as the Producer Licensing Model Act.[16] Although neither the model act nor the Nebraska enactment expressly defined "fraud," the meaning of the word has long been understood in Nebraska insurance law. Over three-quarters of a century ago, we relied upon two definitions of "fraud" in order to determine the meaning of that word under another insurance statute.[17] In the first definition, fraud consists of some deceitful practice or willful device, resorted to with intent to deprive another of his or her right, or in some manner to do him or her an injury, and, as distinguished from negligence, is always positive, intentional.[18] The second definition noted that fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence

---

[14] *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018).

[15] Committee Statement, L.B. 51, Committee on Banking, Commerce and Insurance, 97th Leg., 1st Sess. (Jan. 23, 2001).

[16] Floor Debate, 97th Leg., 1st Sess. 449 (Jan. 29, 2001).

[17] See *Gillan v. Equitable Life Assurance Society*, 143 Neb. 647, 10 N.W.2d 693 (1943).

[18] See *id.*

justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.[19]

In § 44-4059(1)(g), context matters. This subsection groups the word "fraud" with the phrases "any insurance unfair trade practice" and "any unfair claims settlement practice."[20] Significantly, the Legislature did not limit "fraud" to insurance fraud or claims fraud in the way that it did with the other two phrases. In this context, the word "fraud" works broadly and not in a narrow technical sense.

[8] But more important, a broad definition of "fraud" comports with an obvious goal of the Insurance Producers Licensing Act: to protect the public from the unscrupulous behavior of licensees. Thus, we use the broad definition to fulfill that goal rather than to frustrate it. We hold that under § 44-4059(1)(g), "fraud" of an insurance producer means any act, omission, or concealment which involves a breach of legal or equitable duty, trust, or confidence justly reposed, and injurious to another or by which an undue and unconscientious advantage is taken of another.

Having defined "fraud" under § 44-4059(1)(g), we turn to the scope of the "admi[ssion]" made by Diamond's confession of liability in the consent judgment. If the allegations of paragraphs 1 through 184 of the complaint are included in the scope of the admission, this is an easy call. Those paragraphs described an "ongoing foreclosure-rescue scheme to defraud distressed homeowners nationwide," "fraudulently obtain[ing] approximately $3,000,000 from over 450 homeowners," "numerous material misrepresentations to convey the false and fraudulent impression that homeowners will be able to remain in their home," and "misrepresentations to convey the false impression that Bella Homes will stop any foreclosure on the home." Those paragraphs described a blatantly fraudulent scheme.

---

[19] Id.

[20] § 44-4059(1)(g).

But even without relying on those, Diamond's confession of liability in the consent judgment admitted to fraud within the meaning of § 44-4059(1)(g). Under the consent judgment, he confessed liability under count 6 in the complaint, which stated, "Defendants are violating [§ 1015.3(c)] of the MARS Rule by making a representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service without competent and reliable evidence that substantiates that the representation is true." Diamond does not dispute that he was one of the "defendants" described in count 6. We apply the meaning of the word "fraud" as used in § 44-4059(1)(g) to Diamond's confession of liability for a violation of § 1015.3(c) of the MARS rule. Our conclusion is: Diamond admitted to an omission in violation of a legal duty by which an undue and unconscientious advantage was taken of another. Accordingly, the district court did not err when it determined that Diamond admitted to fraud in violation of § 44-4059(1)(g).

Diamond also argues that evidence produced after the consent judgment showed that Diamond was merely a "dupe" of Delpiano. We do not believe that Diamond may collaterally attack the substance of his admission in the consent judgment. Moreover, adopting this argument would effectively permit an insurance producer to blindly act as a front man for a fraudulent scheme. This calls to mind the maxim of the three wise monkeys who see no evil, hear no evil, and speak no evil. We do not believe that when the Legislature regulated insurance producers, it intended to condone a producer's blind and deaf participation in a fraudulent scheme.

[9] We address one final matter. At least in Diamond's brief, he argues that "[b]y making a finding of fraudulent conduct, the Department acted arbitrarily and capriciously, exceeding its authority under the Administrative Procedure[] Act."[21] To be considered by an appellate court, an alleged error must be

---

[21] Brief for appellant at 17.

both specifically assigned and specifically argued in the brief of the party asserting the error.[22] As this argument was not specifically assigned, nor was it specifically argued beyond the single sentence, we will not address the argument.

## CONCLUSION

Because Diamond did not report the consent judgment taken against him in another jurisdiction within 30 days of the final disposition of the civil action, he violated § 44-4065(1). The department had the authority to levy an administrative fine. And within the meaning of § 44-4059(1)(g), Diamond's confession of liability in the consent judgment constituted an admission of fraud.

The decision of the district court conformed to the law, was supported by competent evidence, and was neither arbitrary, capricious, nor unreasonable. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

[22] *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018).