IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

OPHEIM V. OPHEIM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAYSHA R. OPHEIM, NOW KNOWN AS DAYSHA R. STONE, APPELLANT,

V.

DAMON R. OPHEIM, APPELLEE.

Filed November 2, 2021.    No. A-20-821.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Daysha R. Stone, pro se.

Donald A. Roberts and Justin A. Roberts, of Roberts Law, L.L.C., for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Daysha R. Opheim, now known as Daysha R. Stone, appeals from an order of the district court for Sarpy County which partially granted the request of Damon R. Opheim to modify the parties' parenting plan for their minor children. On appeal, Daysha asserts that the district court erred in determining that Damon met his burden of proof to show that a material change of circumstances occurred and that the modification was in the best interests of the children. Daysha also alleges that the district court erred in not granting the parties joint legal custody. She further alleges that the district court violated her First Amendment rights in prohibiting her from talking about these proceedings or future court proceedings with the children. For the reasons set forth herein, we affirm the order of the district court.

- 1 -

BACKGROUND

Daysha and Damon were married in February 2003 and divorced in June 2009. In the original decree, Daysha was awarded sole custody of the parties' two daughters, Oasis born in 2005, and Alexis, born in 2006. In 2011, the decree of dissolution was modified with respect to Damon's summer parenting time and child support obligation. However, Daysha remained the girls' custodial parent. On October 1, 2014, Damon filed a second complaint for modification requesting sole physical custody of the children alleging that there had been a material change in circumstances due to concerns regarding Daysha's deteriorating mental health and erratic behavior. Following trial, the district court entered an order of modification on November 10, 2015, granting Damon sole legal and physical custody of the children. Daysha was granted specified parenting time on weekends, certain week days, summer, and holidays. Daysha appealed to this court. On appeal, we recounted and analyzed the evidence presented at trial and affirmed the decision of the district court. See *Opheim v. Opheim*, No. A-15-1153, 2016 WL 6210925 (Neb. App. Oct. 25, 2016) (selected for posting to court website).

On October 17, 2017, Damon again filed a complaint for modification alleging that further events had occurred which constituted a material change in circumstance since the November 2015 modification order was entered that would warrant imposing limitations and restrictions on Daysha's parenting time with the minor children. Damon requested that the district court require that Daysha's parenting time with the children be supervised. In the complaint, Damon specifically alleged that Daysha's conduct in front of the children had worsened and intensified as she continued to claim conspiracies within the city of Bellevue, Nebraska, and makes these types of statements in front of the children. He also alleged that she had been living in her vehicle and had no means of financial support. Damon further alleged that Daysha does not emotionally support the children. Finally, Damon requested permission to remove the children to the state of Iowa.

Daysha filed an answer and counterclaim in response to Damon's complaint, wherein she denied each of the allegations that Damon raised. Additionally, in her counterclaim, she affirmatively alleged that she had lost her job and, as a result, had limited income. She asked the district court to reduce her child support to $50 per month.

On February 6, 2018, Damon filed a motion requesting the suspension of Daysha's parenting time with the children pending the hearing on his complaint for modification. Following a hearing on February 23, 2018, the district court entered a temporary order stating that while it found Daysha's recent behavior concerning, it did not rise to the level to warrant suspension of her parenting time.

A trial was held on Damon's complaint to modify on September 19, 2018. Daysha did not appear at the trial. Damon testified at the trial and the district court dismissed Daysha's counterclaim requesting a reduction in child support and entered an order of modification granting permission for Damon to permanently remove the children from Nebraska to Iowa. The court's order also terminated Daysha's Wednesday evening parenting time, such that she was only permitted to see the children every other weekend. Daysha asserted that she did not receive notice of the trial and filed a motion to vacate the order and for a new trial which the district court granted.

On August 1, 2019, prior to a new trial being held, Daysha filed a motion she called an "Amended Answer and Counter to Complaint" wherein she alleged that Damon did not permit her

to exercise her parenting time with the children on various dates. Daysha also asserted that the parties' youngest child, Alexis, had requested to live with her full time. Daysha requested that the court award the parties with joint legal custody of both children and award her with sole physical custody of Alexis.

The new trial was held on March 10 and June 23, 2020. The primary witnesses at trial were Damon and Daysha. Damon also called as a witness the principal of Alexis and Oasis' former school in Bellevue, Nebraska. Alexis and Oasis testified in camera.

Daysha and Damon both testified with respect to their respective residences. Daysha testified that in November 2015, she lived in a house in Bellevue, Nebraska; however, began living in her car in 2016. She lived in her car for approximately 1 month because she was attempting to save money in order to be able to afford an apartment. She moved into an apartment in Bellevue in 2016 before again living in her car for approximately a month. She testified that she then moved to Denison, Iowa, in 2017 where she lived in an extended stay hotel for approximately 3 months. She eventually moved to Griswold, Iowa, to a small one-bedroom apartment above a bar where she resided at the time of trial. Daysha pays a reduced rental at this location by virtue of qualifying for subsidized Section 8 housing.

Damon lives in a four-bedroom home he and his wife, Mallory, own in Council Bluffs, Iowa. In addition to Oasis and Alexis, the 2-year-old daughter of Damon and Mallory lives in the home. Each of the children have their own bedroom. According to the evidence adduced at trial, Daysha's residence in Griswold is approximately 45 minutes away from Damon's residence in Council Bluffs. Daysha testified that if she was awarded sole physical custody of Alexis, she would begin the process of seeking Section 8 housing in Council Bluffs. She had not made any efforts to begin the moving process at the time of trial, stating her preference to wait for the court's decision on custody and because she indicated that she would have difficulty affording a move.

Damon and Daysha also testified as to their respective employments. Damon testified that he has been employed through the U.S. Air Force for 14 years. Daysha testified that she previously worked as a real estate agent but she had not been employed since November 2014. She receives social security disability payments as a result of a mental health disability. She receives approximately $1,176 per month from her disability benefits, but $167 per month is deducted for her child support obligation. She also receives SNAP benefits and accesses food banks for additional help with food. Daysha stated that she has sold crafts she has made, but that to this point her costs have exceeded the proceeds of the sales. Daysha testified that she does not have any plans to seek employment because she believes that Damon has been "able to pull some strings" and has intentionally ruined her career. Daysha provided the following explanation regarding how Damon ruined her career.

During the prior modification proceedings in 2015, several witnesses who had either been neighbors of Daysha or teachers of the children testified regarding concerns about Daysha's behavior and mental health. She believed that information provided by these witnesses to the police and the Department of Health and Human Services resulted in her being committed to a mental health care facility for treatment. During the current trial, Daysha indicated that Damon manipulated these witnesses into providing false information and testifying against her. In addition, she explained that Damon initiated the inpatient mental health treatment:

The reason they put me there was on a sworn affidavit. He said I could have a gun and I could shoot people with it. He told them I was smashed and that the turned - he said I was smashed when they asked if I drank. But he left out things like I don't drink, you idiot. LOL. I don't drink, you idiot. He lied. That's what got me in there.

Daysha also contended that the only reason she was in the mental health facility was because Damon was involved in a secret meeting with the Board of Mental Health and she was not notified of the meeting. She explained that she lost clients in her former profession as a realtor because of the time she spent at a mental health care facility. Ultimately, Daysha testified that she believed she would be unable to work in the real estate field in the future due to Damon's actions and the resulting time she spent in a mental health facility.

Daysha admitted that she had made a statement in front of Damon and her daughters that was disparaging to Jewish people. Daysha admitted that the day she made the statement, she had something against "Jews" because her brother "turned against" her while she was in a mental health care facility. Damon testified that Daysha made these comments in January 2017 and initially, Damon and Daysha were having a logical conversation in regard to a Supreme Court ruling, which turned into Daysha using curse words toward people of the Jewish faith and about a secret society. During Daysha's comments, Damon reminded her that the children were present and she simply repeated what she had said. Daysha testified at trial that she loves people of the Jewish faith.

Damon's concerns about Daysha's mental health and the safety of the children while in her care was heightened by a telephone call he received from the Denison, Iowa, police department in 2018. The officer who called reported that after officers had contacted her, Daysha had threatened to kill herself and the entire police department. The threats arose from an incident wherein Daysha had ordered a pizza for delivery. Daysha became upset with the charge for the pizza and called the restaurant. Daysha told the employee that she was a Christian woman trying to do right in the world, that the FBI and CIA are after her, and she was just going to end it. The employee who answered the call was concerned for her safety and contacted the police. After the police made contact with Daysha, she called the restaurant again and accused the employee of being the anti-Christ, a liar, and a sinner for calling the police on her. In her testimony, Daysha accused the employee of lying due to Damon's influence. She stated that Damon "is a liar himself. He hangs out with liars. He knows all the liars, all the con artists or something. This is insane. This is why I don't work because of these lies and affidavits from people I've never even met." She explained that she did not know why the employee was lying except,

[j]ust maybe Damon talked to him. He does that. He'll call people. He'll call my landlords. He'll try to get in touch with my neighbors, my friends, my family, anything he can to get something on me. He'll turn it all in to Oasis and never even show it to me. That's why she's messed up.

Damon testified that Daysha talks to the children about conspiracies that Daysha believes in. Damon testified about an incident that occurred in June 2019, where Oasis and Daysha were fighting because Oasis refused to attend scheduled parenting time with Daysha. According to Damon, Daysha demanded that he force Oasis into Daysha's vehicle. Damon said that Oasis told

him that Daysha says weird things and Daysha clarified that it was about a secret society. Daysha initially denied that she talks to the children about conspiracies, including counterintelligence, secret societies, and statements that denigrate people of the Jewish faith. However, she later conceded that she did talk to Oasis about these things because she believes that they are the truth. Daysha explained that she believes population control is real. In response to a line of questioning regarding her belief in conspiracies, Daysha responded:

> You're trying to set me up to be crazy because I can't prove something. When thousands, if not millions, of people believe this stuff, they're just too scared to talk about it. . . . We don't go around passing out -- go ahead. I'm sure you love this. . . . Makes me look stupid. You're the perfect lawyer.

She admitted that she believes these conspiracies are true and "pretending those things don't exist is bad." She also explained that state secrets "can't be heard in a court. That's how secretive they are."

Daysha explained that she has told Oasis that Oasis is ruining Alexis' childhood because Oasis' testimony in court would prevent Daysha from having custody of Alexis. According to Daysha, Oasis is "always trying to record me, always trying to get me in trouble." She also testified that she has told Oasis that when she plays the bass guitar at the church she attends, she is worshipping Satan.

The principal at Oasis and Alexis' former elementary school in Bellevue testified as to her two interactions with Daysha in February 2015 and September 2016. She testified that in February 2015, Daysha came to the school looking for Oasis and Alexis, although they were no longer students there. According to the principal, school officials were notified that Daysha was attempting to gain access to different elementary schools in the area in order to find her children. The school was told not to let her in, but Daysha had been allowed in. The principal testified that Daysha asked if her children went to school. She informed Daysha that they could not give her this information.

The principal also testified about a separate incident in September 2016, when the school was notified that Daysha was in the parking lot at the school. At the time, the school had been asked to notify the police and the student service director if Daysha was seen at the school. The school called the police when they were notified that Daysha was in the parking lot. According to the principal, the school's policy was to call the police if a custody issue arose. She further explained that the school's safety plan required them to prevent any people who do not have children at the school or who are not there on official business from being in the school.

Oasis and Alexis both testified in camera and the testimony was shared with the parties at the conclusion of trial. Oasis, 15 years old at the time of trial, testified that she does not feel like the past custody orders should apply to her now that she is older. She explained that she does not want to attend parenting time with Daysha but is worried that both she and Damon will get into trouble if she does not go. She explained that the reason that she does not want to attend visitations with Daysha is because she gets into arguments with Daysha and does not want to have more arguments. She testified that on occasion she is embarrassed by Daysha. As an example, she testified that when they go to the library, Daysha will wear headphones and talk loudly. Oasis also heard Daysha talk about government sound waves and other conspiracies which concerns Oasis.

Oasis further explained that Daysha calls Damon a liar and a hypocrite and claims that Damon is brainwashing her. In contrast, she testified that Damon does not talk poorly about Daysha except to say Daysha has spent time in a mental hospital. Oasis explained that she has a good relationship with Alexis and that she loves her young half sister who she lives with in Council Bluffs. She further explained that she offers to watch her half sister for Damon and Mallory because she wants to.

Alexis, who was 13 years old at the time of trial, told the court that she would prefer to live with Daysha instead of Damon. However, she wants to continue attending school in Council Bluffs. Alexis explained that she believed Daysha would move to Council Bluffs to help facilitate Alexis attending the same school. The primary reason given for living with Daysha was that she feels less stress when she is with Daysha and Daysha listens to her. She believes that Damon treats her differently because she wants to live with Daysha. She also believes that her stepmother, Mallory, is "really snotty." She denies that Daysha has any mental health problems. While she denied that Daysha has discussed prior court proceedings with her, she indicated she has heard Daysha say that Damon owes her money for child support.

The district court entered a decree of modification on August 20, 2020. The court decreased Daysha's parenting time to 3 hours on each Wednesday evening and 3 hours each Saturday and Sunday. Following a motion to alter or amend, the court ordered that Saturday and Sunday visitation would occur every other weekend. Daysha was given 4 hours of parenting time on the holidays assigned to her. The court also reduced summer parenting time to the same schedule as the remainder of the year. The court expressed its concern that unless supervised, Daysha would place improper influence over Alexis. However, it found that Daysha did not have the economic means to afford a supervision agency. As a result, the court found that minimizing Daysha's ability to isolate Alexis and influence her was the most appropriate solution.

As a basis for modification, the court found that Damon had proved that a material change in circumstances occurred since the entry of the prior modification order. Specifically, the court found that Daysha's behavior has continued to decline and "[t]his declination has a negative effect on the minor children and a modification of the Decree is in the best interests of the minor children." The court found that Daysha did not meet her burden to modify the decree by awarding her sole custody of Alexis. Specifically, the court noted that while Alexis' stated preference to reside with Daysha could constitute a material change of circumstances, in this case, Alexis did not possess the requisite capacity to express an intelligent preference. The court explained that Alexis' stated preference was the "result of [Daysha]'s improper influence over, and suggestions to, Alexis." Moreover, the court explained that Alexis was unable to "provide answers with articulate reasons" to support her opinions. In contrast, the court found Oasis to be credible as to her descriptions of troubling behavior engaged in by Daysha, and of requisite maturity and age to give her opinion.

The court made specific findings of fact. The court found that Daysha was transient for a period of time and lived in her vehicle before she eventually moved to Denison, Iowa, even though she previously told Damon she would move to Council Bluffs. According to the court, Daysha has not made any arrangements, inquiries, or discussions to move to Council Bluffs. The district court also noted that Daysha continues to demonstrate concerning behaviors, specifically noting the testimony of the principal and the threats made in Denison involving Daysha, the restaurant

worker, and the police. The court further found that she has continued to discuss matters including "mental illness, government surveillance, the Illuminati, people of the Jewish faith, government spying, Free Masons, and the Secret State" with and in front of the children. The court also found that Damon and Daysha continue to have an inability to communicate.

In addition to all of the above considerations, the district court explicitly found that Damon was a credible witness and that he was more credible than Daysha. Finally, the court noted that a split custody arrangement would not be in the best interest of Oasis and Alexis because, in part, it would negatively affect their relationship with each other and Alexis' relationship with her half sister.

Daysha now appeals to this court.

## ASSIGNMENTS OF ERROR

Daysha assigns 12 errors by the district court. However, to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Diamond v. State*, 302 Neb. 892, 926 N.W.2d 71 (2019). This requirement is not designed to impede appellate review, but to facilitate it by preventing parties from shifting to appellate courts the critical tasks of searching the record for relevant facts, identifying possible error, and articulating a legal rationale that supports the assigned error. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Moreover, an argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Upon our review, there are several errors that Daysha assigns but does not argue or does not argue more than merely restating the error. We recognize that Daysha is pro se upon appeal. However, a pro se litigant is obligated to follow the same appellate rules and procedures applicable to counsel, including the requirement that the appellant point out alleged errors by reference to specific portions of the record. *Cole v. Isherwood*, 271 Neb. 684, 716 N.W.2d 36 (2006). Accordingly, we do not address many of the errors assigned in Daysha's brief.

The errors that Daysha both assigns and argues, consolidated, renumbered, and restated are: (1) the district court erred in finding that a material change in circumstances was proven and that the modification of parenting time was in the best interests of the children, (2) the district court erred in not granting joint legal custody of the children to the parties, and (3) the district court violated Daysha's constitutional rights by prohibiting her from talking to her children about any past, current, or future court proceedings.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Cornwell v. Cornwell*, 309 Neb. 156, 959 N.W.2d 243 (2021).

ANALYSIS

Daysha argues that the district court erred in finding that Damon met his burden of proof to show that a material change of circumstances occurred after the 2015 modification. In addition, she argues that the district court erred in finding that it was in the best interests of the children to decrease her parenting time. Upon our de novo review of the record, we find no abuse of discretion.

In a child custody modification action the party seeking modification must first demonstrate that a material change in circumstances has occurred after the entry of the previous custody order which affects the best interests of the child and that it is in the child's best interests that custody be changed. *Hopkins v. Hopkins, supra.* A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The prior modification was entered on November 30, 2015. Daysha argues that the court should not have considered evidence concerning events that occurred prior to that time. We recognize that some evidence was received regarding Daysha's prior mental health history and some specific events pertinent thereto. We note, however, that Daysha testified to some of these events in her case in chief. However, we note that the purpose of most, if not all of this testimony was to give the judge a factual context for the later events that occurred following the prior order of modification. We note that the judge hearing this trial was not the same judge who had heard the prior modification trial and entered the prior order. Moreover, nearly every event relied upon by the court in its order took place after that date.

In his complaint to modify, Damon specifically alleged that Daysha's behaviors in front of the children had worsened and intensified since the entry of the prior modification order. In his testimony, Damon testified about circumstances which had occurred in 2017 and 2018, after the prior order was entered. He testified regarding the disparaging comments Daysha made in January 2017 about people of the Jewish faith and that she repeated such comments even after being reminded that she was in front of the children. Damon also testified that in 2018, he received a phone call from the Denison, Iowa, police department, during which he was informed that Daysha had threatened to commit suicide and to kill the entire police department. In addition, Oasis testified that she heard Daysha talk about government soundwaves and other conspiracies. Damon and Oasis both testified that Daysha continues to make statements about conspiracies in front of Oasis and Alexis. While Daysha initially denied making these statements, she later conceded that she did make such statements and that she believes it is worse if someone would not talk about them. Daysha testified as to her belief in the truth of her statements.

Finally, we note that the district court made specific findings that Damon was a credible witness and was, in fact, a more credible witness than Daysha. We will consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and will give great weight to the trial court's judgment as to credibility. *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). When viewing the totality of the evidence, and accepting the veracity of Damon's testimony, as the district court did, we find no abuse of discretion in the district court's conclusion that a material change of circumstances occurred since the entry of the prior

modification order in 2015 because Daysha's behavior and mental health issues had continued to intensify and that she discusses inappropriate topics with the children.

Next, we turn to whether the best interests of the children compel a change to the prior custody order and parenting plan. The child's best interests require a parenting arrangement and plan which provides for a child's emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923 (Reissue 2016). Moreover, § 43-2923 sets forth a nonexhaustive list of factors to be considered in determining the best interests of a child in regard to custody. Such factors include the relationship of the minor child with each parent, the desires of the minor child, the general health and well-being of the minor child, and credible evidence of abuse inflicted on the child by any family or household member.

Specifically regarding the desires of a minor child, the statute provides that the court should consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning." § 43-2923(6)(b). The Nebraska Supreme Court in applying this provision has stated that while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The Supreme Court has also found that in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age. *Id.* If a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration alongside other factors. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020). The amount of consideration will depend on the child's age and ability to give reasons for his or her preference. *Id.* More consideration will be afforded where additional factors that bear on the child's best interests undergird the child's stated preference and reasoning. *Id.* Where a trial court's order demonstrates that the child's age and reasoning have been duly considered alongside the child's stated preference, we will generally defer to the trial court's credibility determinations in our assessment of facts. *Id.*

In the present case, Alexis was of a sufficient age (13) to express her preference to reside with Daysha. Alexis' preference was based on her determination that she felt less stressed when she was with Daysha and Daysha listened to her. She also indicated dissatisfaction with her relationship with Mallory, and, to a lesser extent, Oasis. The district court considered her in camera testimony and determined that she was unable to provide answers with articulate reasons to support her opinions. The district court, instead, determined that her answers were the result of suggestions by Daysha to Alexis. The district court expressed concern that Daysha was improperly influencing Alexis. As a result, the district court placed little weight or credibility on Alexis' testimony and ultimately determined that it needed to limit the ability of Daysha to isolate Alexis and influence her. In contrast, the court found Oasis' testimony to be credible regarding Daysha's behavior and the topics she discusses with the girls during her parenting time. The district court determined that Oasis had the necessary maturity to express her preference. The district court's order thus demonstrated that the child's age and reasoning had been duly considered. Pursuant to our standard of review, we defer to the court's credibility determinations with respect to Alexis and Oasis.

With respect to the rest of the best interests analysis, we find no abuse of discretion in the district court's determination that the best interests of the children supports a decrease in Daysha's

- 9 -

parenting time. Daysha has not demonstrated stability for herself or the children since the previous modification order. She has moved frequently, even to the extent of living in her car at times. The children currently attend school in Council Bluffs which they both want to continue. Despite attempting to regain custody of Alexis, Daysha has made no efforts to move to Council Bluffs to be closer to her children. Nor has she made any efforts to obtain employment after losing her job in 2014.

The emotional growth and well-being of the children also support such a change. Daysha's parenting time was decreased to minimize Daysha's ability to isolate Alexis and influence her on topics that are at best inappropriate for a child, and at worst bizarre. She also discusses the ongoing acrimony present in her relationship with Damon with the children. She has told Oasis that Oasis is ruining Alexis' childhood with her testimony that would prevent her from regaining custody of Alexis. The evidence demonstrates that Daysha still harbors resentment toward Damon and communicates her opinion to the children that Damon is a liar and a hypocrite. Based on her testimony throughout the trial, she continues to blame Damon for her not having a job. She accused Damon of influencing witnesses to lie for him.

Daysha has also threatened harm to herself and to an entire police department. This issue provides further support for the court's decision to limit Daysha's parenting time to shorter periods of time. Accordingly, we find no abuse of discretion in the district court's determination that the best interests of the children, specifically with respect to their safety, stability, emotional growth, and well-being supports the court's modification of parenting time.

*Joint Legal Custody.*

Daysha argues that the district court should have granted the parties joint legal custody because the children would benefit from her and Damon sharing joint legal custody. We note that Daysha also argues that she should have been awarded physical custody of Alexis. However, she did not assign this issue as error in her brief. Since this issue was not specifically assigned as error, we do not consider it. See *Diamond v. State*, 302 Neb. 892, 926 N.W.2d 71 (2019).

"Legal custody" focuses entirely on decisionmaking authority and is defined as "the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(13) (Reissue 2016). The court's determination is governed by the best interests of the children. The Parenting Act, Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2018), defines "[j]oint legal custody" as the "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." § 43-2922(11). Courts typically do not award joint legal custody when the parties are unable to communicate effectively. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009).

In the present case, Daysha concedes in her brief on appeal that the parties have a high conflict relationship and are unable to communicate effectively. The district court agreed, explicitly noting in its factual finding that the parties were unable to communicate effectively. The evidence presented at trial also revealed that Daysha has difficulty in making good choices regarding the children's welfare. Given the parties' volatile relationship, Daysha's ongoing mental health struggles, and her deficiencies in making decisions, we agree with the district court that it is not in the best interests of the children to grant the parties joint legal custody.

*First Amendment Violation.*

Daysha argues that the portion of the district court's order which instructed her not to discuss the court proceedings with her children violated her First Amendment rights. In her brief on appeal, Daysha provides this court with no case law applying the First Amendment to an analogous situation.

Daysha is correct insofar as she argues that a parent has a constitutionally protected, fundamental right to make decisions concerning the care, custody, and control of the child. See *Davis v. Moats*, 308 Neb. 757, 956 N.W.2d 682 (2021). However, our Supreme Court has also explained that a custody order should heed both parents' constitutional rights to the care, custody, and control of their child, as well as the child's need for a stable, healthy environment. *Korth v. Korth*, 309 Neb. 115, 958 N.W.2d 683 (2021). Moreover, the paramount concern for a court in fashioning a parenting plan must be the best interests of the children. § 43-2921. The parenting plan must establish specific individual responsibility for performing parenting functions as are necessary and appropriate for the care and healthy development of each child affected by the parenting plan. *Id.* In recognition that cooperation between parents is in the child's best interests, trial courts have placed restrictions on communication from the parent to the child, which we have upheld. For example, when it is in the child's best interests, a parenting plan may provide that the parents not disparage or denigrate the other parent. See, e.g., *State on behalf of Carter W. v. Anthony W.*, 24 Neb. App. 47, 879 N.W.2d 402 (2016) (finding that there was not an abuse of discretion in devising plan for communication which will minimize conflict between parties).

In another case, the Supreme Court determined that under the facts of that case, there was not an abuse of discretion in imposing reasonable restrictions on a mother's religious discussions with the minor children. *Peterson v. Peterson*, 239 Neb. 113, 474 N.W.2d 862 (1991). The court found that the father's abilities to perform his duties as a custodial parent and to provide for the children's religious training would be undermined with corresponding harm to the children if the mother was permitted to foster and maintain fears in the children if they participated in the activities of the father's church. *Id.* In addition, the court noted that these discussions were causing great distress and confusion for the children. *Id.* The court went further and held that when a parent's First Amendment interests may be implicated in an action concerning the custody or visitation of his or her children, the courts will not impinge upon those interests absent an immediate and substantial threat to the temporal well-being of the children. *Id.*

In the present case, there was an immediate and substantial threat to the well-being of the children. Daysha has talked to the children about the court proceedings stoking conflict between the children and Damon. She has called Damon a liar and a hypocrite. She also believes that Damon is manipulating witnesses to testify against her. Here, after personally observing Alexis' in camera testimony, the district court found that her opinions were the result of Daysha's suggestions and improper influence over her. The record supports the district court's determination that Daysha has told Oasis that she is ruining Alexis' childhood by giving testimony that would prevent Daysha from having custody of Alexis. Daysha conceded that she had made this statement to Oasis.

The district court placed a reasonable restriction on Daysha's communication with her children in an effort to minimize any improper influence over the children, and more importantly,

in an effort to promote a positive relationship between the children and both of their parents. The court, based on the evidence presented, had reason to require Daysha to stop disparaging Damon or otherwise talk about past or ongoing litigation. Such communication promotes confusion and distress in the children and undermines Damon's ability to parent the children effectively. The district court sought to resolve the conflicts between the parties in a manner that would be in the best interests of the children. Part of that effort was its order to remove the children from the conflict between the parents. Under the facts and circumstances of this case, a prohibition on talking about current and future court proceedings is a specific individual responsibility within the parenting plan that is necessary and appropriate for the care and healthy development of Alexis and Oasis. Accordingly, we find Daysha's assignment of error to be without merit.

## CONCLUSION

Based upon our de novo review of the record, we find that the district court did not abuse its discretion in entering an order reducing Daysha's parenting time with the children and by instructing her not to discuss the court proceedings with her children. We further find no abuse of discretion in the court's decision to deny Daysha's request for joint legal custody.

AFFIRMED.